**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael R. KYLE, Defendant–Appellant.**

No. 01–6014.

United States Court of Appeals, Sixth Circuit.

Dec. 6, 2001.

Before NORRIS, SILER, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

The defendant appeals his sentence following his plea of guilty to storing hazardous waste without a permit in violation of 42 U.S.C. § 6928(d)(2)(A) (2001). The defendant argues that the district court erred when it failed to make specific factual findings regarding the nature, quantity, and risk of the substance involved, and further erred in choosing not to depart downward two base offense levels based on the relatively innocuous nature of those substances, as permitted by United States Sentencing Guidelines (USSG) § 2Q1.2, app. n. 8 (2000). The defendant further claims that the court erred in refusing to depart downward based upon the totality of the circumstances pursuant to USSG § 5K2.0 (2000), and that the district court improperly calculated his criminal history category and failed to address specifically his claim that, contrary to the conclusions of the presentence report, he did not commit the instant offense while on probation. For the following reasons, we conclude that we do not have jurisdiction over the district court's refusal to depart downward and that the district court made no reversible error in sentencing the defendant. Accordingly, we dismiss the defendant's first claim for lack of jurisdiction and af-

firm the sentence imposed by the district court.

## BACKGROUND

The defendant, Michael R. Kyle, was the president of Custom Concepts, Inc. (CCI). He and his equal partner and vice president, Edward L. Johnson, produced fiberglass automotive parts, repaired collision damage, and operated a retail business that sold after-market automotive parts. Throughout the course of business, the company generated hazardous waste, specifically acetone, isomers of xylene, and toluene. Kyle and Johnson had a documented history of not complying with the state or federal environmental regulations that required the proper labeling, storage, and disposal of hazardous waste, dating back at least to October 20, 1998, when the Tennessee Department of Environment and Conservation (TDEC) inspected the CCI premises and found hazardous wastes improperly stored on site.

CCI experienced serious financial difficulties, and Carl Romberg, the owner of the building in which CCI operated, eventually evicted the company for failure to pay rent. Kyle and Johnson moved the company and changed its name to Customer Fiberglass, Inc.

In January 2000, after CCI vacated the premises, Romberg discovered that Kyle and Johnson had abandoned seventy-two 55–gallon drums containing various liquid wastes and fiberglass resin. On February 8, 2000, the Environmental Protection Agency conducted a criminal enforcement sampling investigation and determined that fourteen of the seventy-two drums contained hazardous waste. More specifically, the liquid in the fourteen drums exhibited the characteristic of ignitability. Four of the fourteen also exhibited the characteristic of toxicity. On July 7, 2000,

Romberg paid $9,540.00 to dispose legally of the hazardous waste.

The East Tennessee Environmental Crimes Task Force interviewed both Kyle and Johnson. They admitted that the contents of the drums had accumulated over approximately two years. They also conceded that they knew the proper method for the storage and disposal of hazardous waste but maintained that they did not have the funds to store and dispose of the waste properly. The waste was not marked or identified. Both Kyle and Johnson accepted responsibility for the crime.

Kyle and Johnson were arrested and indicted on three separate counts. Count One charged that "from on or about [the] 20th day of October, 1998, and continuing until on or about the 7th day of July, 2000," Kyle and Johnson had knowingly stored hazardous waste without a permit. Counts Two and Three involved knowingly generating, storing, disposing of, and handling hazardous waste and failing to file records, applications, and reports. Kyle and Johnson entered into separate plea agreements in which they pled guilty to Count One in exchange for the dismissal of Counts Two and Three, and agreed to admit all facts alleged in the indictment and the stipulated "agreed Factual Basis," which they signed contemporaneously with the plea agreement. They agreed that the maximum penalty they could receive was five years imprisonment, a $250,000.00 fine, three years supervised release, and a mandatory assessment fee of $100.00, and they waived all their rights except the right to appeal their sentences. The plea agreement explicitly stated that the violation occurred "from on or about October 20, 1998 until on or about July 7, 2000."

Prior to sentencing, Kyle was convicted twice of driving under the influence. He was placed on probation for these offenses

on June 1, 2000. He has an extensive criminal history, which includes two previous DUIs. At the time of Kyle's sentencing, another DUI was pending.

Kyle and Johnson were sentenced separately on July 7, 2001. The district court accepted Kyle's plea agreement and found his presentence report to be accurate. The district court adopted the presentence report's recommendation of a base level offense of ten—a base level of eight for mishandling hazardous materials, plus an additional four levels for storing hazardous material without a permit, less two levels for acceptance of responsibility. The district court found that Kyle had a criminal history category of III, based upon the three criminal history points Kyle received for his DUIs and the two additional criminal history points he received pursuant to USSG § 4A1.1(d) for committing the offense while he was on probation. These findings resulted in a ten to sixteen month range in Zone C.

Kyle filed a motion for downward departure, which was denied. He was sentenced to five months of imprisonment and three years of supervised release, including five months of home detention. Further, Kyle was required to make restitution in the amount of $9,540.00 to Romberg, and to implement a hazardous waste prevention and detection program. Comparatively, the district court acknowledged that this sentence was minimal.

Kyle appeals his sentence.

## ANALYSIS

### A. Standard of Review

When we review a sentence imposed by a district court, we accept the findings of fact unless they are clearly erroneous. 18 U.S.C. § 3742(e) (2001). We give "due deference" to the district court's application of the sentencing guidelines to the facts. *Id.*

### B. Downward Departure

Two of Kyle's claims on appeal involve a request for this court to review and reverse the district court's refusal to depart downward two base offense levels. First, Kyle asserts that the district court committed reversible error when it failed to make specific findings regarding the nature, quantity, and risk of the substances illegally stored. Kyle maintains that had the court made the required findings, he would have been entitled to a two-level downward departure pursuant to USSG § 2Q1.2, app. n. 8 because the 55–gallon drums were sealed and were not leaking into the environment, and the quantity was so minimal that it did not present a threat.

Second, Kyle claims that the district court erred by refusing to depart downward pursuant to the provisions of USSG § 5K2.0. Kyle argues that the district court failed to consider the totality of the circumstances, specifically Kyle's contentions that placing him in prison would result in the destruction of his business and the loss of his employees' jobs and that his criminal history category significantly over-represented the seriousness of his criminal history. Had the district court departed downward two levels, Kyle's offense would have fallen within Zone B instead of Zone C, making him eligible for a sentence of confinement such as home detention rather than imprisonment.

We reject each of these claims. Although in his objections to the presentence report, Kyle raised his claim that because of the nature and quantity of the substances, the risks involved in their storage were minimal, he provided no evidence whatsoever at the sentencing hearing to support that claim. Rather, he merely reiterated his view that in relation to other

environmental offenses (and compared to the really reprehensible actions he could have undertaken with regard to the hazardous waste that he illegally stored), this offense was innocuous. The district court did· not expressly reject the defendant's attempt to minimize his offense, but the court did specifically adopt the findings of the presentence report. Under these circumstances, we find no merit to Kyle's claim that the district court's failure to make specific factual findings was reversible error.

■ It is well established in this circuit that "a district court's refusal to depart downward from a sentence within the properly computed guideline range is not appealable." *United States v. Pickett*, 941 F.2d 411, 417–18 (6th Cir.1991). We may review a district court's denial of a defendant's motion for a downward departure only if the district court mistakenly believed that it lacked the authority to grant such a departure as a matter of law. *United States v. Shabazz*, 263 F.3d 603, 611 (6th Cir.2001).

■ Here, in denying Kyle's motion for downward departure, the judge said, "The court recognizes a number of appropriate circumstances that the Court might very well depart downward. So the Court is stating that it believes it does have the authority to depart downward, but the Court does not believe that the facts demonstrated here would justify a downward departure in this case." That the district court understood its authority to depart could not be clearer. We lack jurisdiction to review this claim.

*C. Criminal History Category*

Kyle asserts that the district court improperly increased his criminal history points by two under USSG § 4A1.1(d) because he was not on probation at the time of the offense. He argues that because it

was legal for him to store the waste without a permit for 180 days, the offense commenced on the day after he was required to obtain a permit for the storage of those materials and ended on the day the offense was discovered. By his calculations, the violation did not begin until 180 days after October 20, 1998—the day of the TDEC inspection—and ended around February 8, 2000—the date on which the criminal investigation was begun. Therefore, Kyle contends, the offense ended long before June 1, 2000, the date he was placed on probation.

■ We acknowledge the paucity of case law regarding the definite beginning and ending of such an offense. However, we need not address this issue—or Kyle's related claim that the district court failed to make specific factual findings with regard to the date the offense terminated— because Kyle pled guilty to this offense. The Supreme Court has held that when a defendant voluntarily and knowingly enters a guilty plea, that individual admits all averments of fact in the indictment. *Tollett v. Henderson*, 411 U.S. 258, 260–67, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). The indictment here expressly states that "from on or about [the] 20th day of October, 1998, and continuing until on or about the 7th day of July, 2000," Kyle knowingly stored hazardous waste without a permit. Similarly, the plea agreement specifically states that the offense "occurr[ed] from on or about October 20, 1988, until on or about July 7, 2000." It is evident that Kyle admitted to the beginning and ending dates of the offense.

■ Kyle was placed on probation for his DUI convictions on June 1, 2000, more than a month before the legal disposal of the hazardous waste was accomplished on July 7, 2000, the admitted ending date of the offense. Because Kyle was on proba-

tion for at least a portion of the time period of the offense, the district court did not err by increasing Kyle's criminal history score by two points under USSG § 4A1.1(d).

## CONCLUSION

For the foregoing reasons, we DISMISS for lack of jurisdiction Kyle's downward departure claims made pursuant to USSG §§ 2Q1.2, app. n. 8 and 5K2.0. We AFFIRM the sentence imposed by the district court.