NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0028n.06

No. 12–2634

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 15, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff – Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| BENITO RUIZ-GONZALEZ, | ) | |
| aka Benito Ruiz-Gonzales | ) | OPINION |
| | ) | |
| Defendant – Appellant. | ) | |

Before:  COOK and STRANCH, Circuit Judges, and CARR, District Judge.[*]

**CARR,** District Judge.  Benito Ruiz-Gonzalez appeals his forty-eight month sentence imposed following his plea of guilty to being an alien in possession of a firearm and resisting a law enforcement officer.  He argues that the district court's sentence was substantively unreasonable and that the court erred in imposing an upward departure.  Because the district court did not abuse its discretion on either issue, we AFFIRM.

## I.  Facts

On May 6, 2012, Benito Ruiz-Gonzalez and Salvador Rivera-Garcia were in a Chevrolet Trailblazer at a Cinco de Mayo celebration in southwest Detroit.  During the celebration, Ruiz-Gonzalez fired multiple shots into the crowd through the driver-side window.

---

[*] The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

1

Nearby police officers saw Ruiz-Gonzalez shooting and gave chase. Ruiz-Gonzalez, driving at a high speed, went down a one-way street *the wrong way* where children were playing. According to the audio file of the officers' communications during the event, as the officers watched the defendant accelerate and steer his vehicle directly toward the children playing in the street, they exclaimed, "He's trying to run the kids over, he's trying to run the kids over."

A man, Perez-Robles,[1] and a woman saw Ruiz-Gonzalez coming and pushed the children to safety. Ruiz-Gonzalez sped up when he saw the pair. Ruiz-Gonzalez ran over the children's bikes and scooters, missing the children by inches. He hit Perez-Robles in the face. Perez-Robles flew back upon impact and landed on the woman. After, an ambulance took him to the hospital, where he remained for two days.

The injuries Perez-Robles suffered, and for which he required treatment, included a concussion, broken cheekbone, and fracture below his nose. He had reconstructive eye surgery which required insertion of a metal plate. He also needed additional surgery to repair his jaw. Since then, Perez-Robles has experienced confusion, memory loss, and trouble sleeping.

Even after he hit Perez-Robles, Ruiz-Gonzalez continued to flee, going the wrong way down another one-way street. He subsequently crashed into a parked vehicle. He got out of his truck and tried to flee on foot. Officers caught up with him a few yards from his vehicle. The police also arrested Rivera-Garcia, the passenger, as he sought to get out of the truck. When the police ordered Rivera-Garcia to raise his hands, he dropped the firearm that Ruiz-Gonzalez had used to shoot into the crowd.

---

[1] Perez-Robles's first name does not appear in the Presentencing Report (PSR).

On May 16, 2012, Ruiz-Gonzalez was charged with: 1) one count of being an alien in possession of a firearm, in violation of 18 U.S.C. § 922(g)(5); 2) one count of being an alien in possession of ammunition, in violation of 18 U.S.C. § 922(g)(5); and 3) one count of resisting and opposing law enforcement, in violation of 18 U.S.C. § 111(b).

On August 1, 2012, Ruiz-Gonzalez pled guilty to counts one and three without a Rule 11 plea agreement. The PSR calculated Ruiz-Gonzalez's adjusted base offense level at 18 with a criminal history category II. This resulted in an advisory sentencing range of 30-37 months. The PSR also recommended an upward departure under U.S.S.G. § 5K2.2 due to the serious bodily injury which Ruiz-Gonzalez had inflicted on Perez-Robles.

At sentencing the district court departed upwards on two grounds: infliction of serious bodily injury under U.S.S.G. § 5K2.2 and recklessly causing a risk of serious injury while fleeing from the police under U.S.S.G. § 3C1.2.

> The district court explained its reasons for the upward departures, stating:
>
> In this case, you're an illegal alien. You've been detected in the United States illegally on at least two occasions. You were previously deported to Mexico. You have three misdemeanor convictions for operating while impaired, possession of a controlled substance and no operator's licence.
>
> The instant offense involves you drinking, driving, recklessly firing a firearm at -- near a crowd of individuals, including young children.
>
> Your actions not only caused -- your reckless actions not only caused serious injury to Mr. Perez-Robles – and again, these actions were incredibly reckless. And these actions resulted in the significant physical injury to Mr. Perez-Robles who suffered an injury which was intentionally inflicted by your behavior -- reckless behavior in driving that car.
>
> So therefore -- and based upon all the information I have available, he will sustain permanent disability as a result of your reckless intentional behavior, and therefore this Court finds a departure to 48 months, an upward departure of 48 months is

3

appropriate, again, to reflect the seriousness of your actions and to provide just punishment for what you did.

R. 32 Page ID 128-29.

Ruiz-Gonzales timely filed this appeal.

## II. Standard of Review

We review a district court's sentencing determination for reasonableness under an abuse-of-discretion standard. *E.g., United States v. Petrus*, 588 F.3d 347, 351 (6th Cir. 2009). We also use that standard when reviewing a district court's decision to depart upwards from the Guidelines. *See United States v. Calloway*, 116 F.3d 1129, 1137 (6th Cir. 1997).

## III. Discussion

### A. Substantive Reasonableness

A sentence is substantively reasonable if the length of the sentence is no greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a). *United States v. Tristan-Madrigal*, 601 F.3d 629, 632-33 (6th Cir. 2010). A sentence is substantively unreasonable if "the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *Id.* at 633 (quoting *United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008)). "[F]acts cannot be used to increase a defendant's sentence without the district court's first determining that the facts are supported by a preponderance of the evidence." *United States v. Louchart*, 680 F.3d 635, 637 (6th Cir. 2012).

Ruiz-Gonzalez argues that the district court abused its discretion by relying on two facts which were not supported by a preponderance of the evidence: 1) that drugs played a role in his offense, and 2) that Perez-Robles suffered permanent injury.

4

1. Passing Reference to Drug Use Played No Material Role at Sentencing

Ruiz-Gonzalez notes that in describing the nature of Ruiz-Gonzalez's offense, the district court referenced drug use, saying, "Drinking, drugs, driving, firing a gun multiple times, speeding, striking Perez, injuring Perez-Robles seriously, permanently, a very, very, very serious offense." R. 32 Page ID 125. Ruiz-Gonzalez contends that the district court's finding that he was either under the influence of drugs or that drug use played a role in the offense renders the sentence substantively unreasonable.

We disagree. We review findings of fact under a clearly erroneous standard. *E.g.*, *United States v. Capozzi*, 723 F.3d 720, 729 (6th Cir. 2013). Moreover, where a district court considers facts that are not supported by the evidence, reversal is not warranted if the erroneous facts were a secondary concern for the court. *See United States v. Cunningham*, 669 F.3d 723, 731 (6th Cir. 2012).

The district court only referenced drugs once during the sentencing, in the statement above. It passingly referred to drugs in a long list of offenses while describing the nature and circumstances of Ruiz-Gonzalez's actions. There is no indication that the district court relied on this fact as a primary concern during the sentencing. Thus, it is not a basis for remand.

2. Permanent Injury

Ruiz-Gonzalez argues that the district court erred by referring to Perez-Robles as being "permanently injured" several times during the sentencing. Specifically, the district court noted "based upon all the information I have available, [Perez-Robles] will sustain permanent disability as a result of your reckless intentional behavior, . . . an upward departure of 48 months is appropriate, again, to reflect the seriousness of your actions and to provide just punishment for what

you did." R. 32 Page ID 128-29. Thus, Ruiz-Gonzalez contends that the district court erred by relying on facts that were not established by a preponderance of the evidence.

Again, we disagree with Ruiz-Gonzalez. The issue here is whether the injuries Ruiz-Gonzales caused when he hit Perez-Robles were "serious," not whether they were permanent. To be serious, an injury need not have permanent consequences. While permanency can underscore the serious nature of an injury, long-lasting effects are not necessary to find that an injury, even where the victim recovers fully, is serious.

The government notes that the district court repeatedly refers to Perez-Robles's physical injuries as "serious" or "significant" but only describes his memory loss as "permanent." The record confirms this. During the sentencing, Ruiz-Gonzalez's counsel asked the court to clarify which injury it was referring to as permanent. The court stated it was referring only to the memory loss. *Id.* at 131.

Furthermore, when Ruiz-Gonzalez's counsel questioned whether there were any medical records to support that contention, the court said "I'm not sure that the issue of a permanent disability is an issue, because in my mind, I don't think I gave a substantial upward departure. I would call it a minimal upward departure." *Id.* at 132.

Thus, even if the fact of memory loss as a permanent disability is not supported by a preponderance of the evidence, the district court indicated that it was not a primary concern or even an issue at all. Rather, the court focused on the recklessness of Ruiz-Gonzalez's conduct itself—shooting a firearm into a crowd and almost hitting children with his vehicle—and the indisputable infliction of serious physical injury to Perez-Robles. *See id.* at 128.

We therefore find no basis for remand.

## B. Departing Upward Was Proper

As noted, the district court departed upward by eleven months, based on U.S.S.G. §§ 5K2.2 and 3C1.2.

Section § 5K2.2 provides:

If significant physical injury resulted, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the extent of the injury, the degree to which it may prove permanent, and the extent to which the injury was intended or knowingly risked. When the victim suffers a major, permanent disability and when such injury was intentionally inflicted, a substantial departure may be appropriate. If the injury is less serious or if the defendant (though criminally negligent) did not knowingly create the risk of harm, a less substantial departure would be indicated. In general, the same considerations apply as in § 5K2.1.

Section § 3C1.2 provides:

If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels.

Ruiz-Gonzalez first argues that to the extent Perez-Robles's injury was used as a basis for departure, that factual basis was already used to enhance the Guidelines by five levels under U.S.S.G. § 2A2.2(b). Quoting *United States v. Chance*, 306 F.3d 356, 393 (6th Cir. 2002), Ruiz-Gonzalez contends that since the injury was already a factor taken into account by the Guidelines, the court should have departed upwards "only if the factor is present to a degree that makes the case different from the ordinary case where the factor is present." Ruiz-Gonzalez argues that the court did not make any comparison to the average case or a determination of how this case varied to such a degree that departure was necessary.

7

Ruiz-Gonzalez also contends that Perez-Robles's injury was not so heinous as to merit a departure. He states that a concussion, broken cheekbone, trouble sleeping, confusion, and memory loss do not make this case exceptional.

Finally, Ruiz-Gonzalez argues the court did not explain its rationale for the extent of its departure. He concedes that the court did give a factual basis for its departure but did not explain how it specifically decided on a sentence of forty-eight months or whether this sentence was "in the middle, low, or high end of the new Guideline." (Appellant's Brief, at 14).

Ruiz-Gonzalez's contention that the district court impermissibly double counted Perez-Robles's injury is misguided. The five-level increase had been applied under U.S.S.G. § 2A2.2(b) because of the mere fact that the victim sustained serious bodily injury. Under § 5K2.2, the district court then considered just how serious the bodily injuries were, also taking into account the defendant's mindset. The district court noted that it was departing upwards because of Ruiz-Gonzalez's reckless actions which resulted in "the significant physical injury to Mr. Perez-Robles who suffered an injury which was intentionally inflicted by [defendant's] behavior." R. 32 Page ID 128. Thus, the district court's departure under § 5K2.2 does not result from "precisely the same aspect of a defendant's conduct." *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999). It is, therefore, not impermissible double counting.

Ruiz-Gonzalez, moreover, fails to consider U.S.S.G. § 3C1.2 in making his arguments that the district court abused its discretion. The district court explicitly recognized it could depart upwards based on that provision and twice specifically referenced application note two of that provision. That application note provides that where a defendant's conduct was more than reckless, a departure above the two-level increase may be warranted.

In this case, we find that the district court did not abuse its discretion in departing upward by eleven months. Ruiz-Gonzalez focuses only on the serious injuries he caused to Perez-Robles. However, he also endangered a crowd of people by firing shots into the air and put the lives of children at risk by leading police in a high-speed chase down a one-way road. The district court noted that he drove down "east on the street, despite the fact that there was no traffic or vehicles parked on the west side" and that he "barely missed hitting the children by inches and ended up running over children's bikes and scooters." R. 32 Page ID 124. His actions were beyond exceptional given the number of people, including children, he put in harm's way that day.

Finally, the district court did not err in failing to specify how it came to a sentence of 48 months exactly. First, the district court provided a laundry list of valid reasons, noted above, for departing upwards. Moreover, it correctly characterized its eleven month departure as minimal, given that the maximum penalty for 18 U.S.C. § 111(b), resisting and opposing law enforcement, is twenty years imprisonment. Lastly, the district court is not required to specify a final, adjusted sentencing range. *United States v. Herrera-Zuniga*, 571 F.3d 568, 588-89 (6th Cir. 2009).

## IV. Conclusion

The district court's sentence was not substantively unreasonable and the court did not err in imposing an upward departure. Accordingly, we AFFIRM the judgment of the district court.